Please rise. This court is now in session. Please be seated. Would you call the next case please? In 315-0336, State of Illinois ex rel. Stephen Saporta, appellant by Stephen Saporta v. State of Illinois athlete, Melinda Koshy Anderson. Thank you. Mr. Saporta? May I come in? Yes, please. Thank you. Good morning. Good morning. Honorable Justices, and may it please the Court, my name is Stephen Saporta, and I'm the pro se relator and the appellant in this case. Should the Court entertain argument from the Attorney General this morning, who declined intervention in this case on behalf of the State of Illinois on January 15, 2014, and who admitted that the State was a non-party to the case in pleadings filed in the Circuit Court on July 15, 2014, as in the common law record at page 61, I would reserve five minutes for rebuttal. But I would like to state my objection for the record for the Attorney General in this quiton action to address the Court. You don't have to reserve any time. You have a given five minute rebuttal period. Thank you. And your objection is noted. Thank you. The cases before this Court are an appeal from the order of the Circuit Court entered March 31, 2015, dismissing this quiton action. It's a final and appealable order under Supreme Court Rule 303. The issue presented to the Court is whether the Circuit Court erred in dismissing this quiton action on the basis of a motion to dismiss filed on or about July 14, 2014, by the Illinois Attorney General, pursuant to Section 175-4C-2A of the Quiton Provisions under the False Claims Act. When six months previous on or about January 15, 2014, the Attorney General elected not to intervene in the litigation, as was its right under Section 175-4B-4B. And at no time thereafter did they ever seek leave of court to intervene on behalf of the State in accordance with the statutory scheme upon a showing of good cause. Mr. Secretary, I need to ask you a couple of questions about who is the actual party in this case. You are acting on behalf of the State. The statute does not give a private right of action. The only right of action belongs to the State. Right. And you are, in essence, in court as a representative of the State. Is that correct? Yes, Your Honor. So the State is actually a party. Yes. The quiton is a Latin phrase shortened to a much longer Latin phrase. And it's basically on behalf of the person and on behalf of the King, now on behalf of the State. So I'm representing myself as well as the State. Are you representing the county clerks? Yes, they're part of the State. No, myself, all the county clerks and all the reporters of these throughout the State. Do they know you're representing them? That's a very interesting question, and I've wrestled with that because the State Attorney General, by definition, is their attorney. They're representative in this litigation. To the extent that we sent out FOIA requests before we filed suit, they may know that. To the extent that everything's, since it's been unsealed as a public record, they may know that. But you did nothing affirmatively to contact them to ask their permission to represent them. Right, and I don't think there's any obligation under the law that I have to do that. Do you represent me? I think, sure, any time. You can't represent someone without their knowledge or permission, can you? Well, I don't know if I'm acting as an attorney. I'm acting as a whistleblower. I'm proceeding under the False Claims Act in my own name and on behalf of the county clerks and the reporters throughout the State. Now, I wrestled with it because I don't know, frankly, that the Attorney General apprised the county clerks and reporters of deeds of what I alleged in the circuit court was a conflict of interest. I'm a part of Lisa Madigan, and under the rules of professional. I don't want to take too much from your argument. No, I understand. I think you've answered my question. Thank you for telling me. It's interesting. I try to ask interesting questions. No, and I appreciate that. No, that's fine. That's fine. The issues presented for review are set forth in our brief, and it really comes down to, as far as I'm concerned, a separation of powers between the executive branch and the judiciary. What happened here was that the Attorney General's office was ordered by the circuit court of Will County to turn over their investigative file under seal for the court to review it. And it was only after that occurred that the Attorney General moved for dismissal of the action. They also moved for protective order, and they moved for the court to reconsider its order. We believe that the court never should have considered the motion to dismiss because the Attorney General wasn't representing anybody. They declined intervention on January 15, 2014. That's in the record, the common law record at page 32. It's in our appendix at page 55. You know, you attempt to distinguish Saatchi, I guess is the case. Yes. But the Supreme Court of Illinois said, you know, one of the options is the Attorney General dismisses them. Sure, and that's a good question. You can intervene, you can decide not to intervene, or you can move to dismiss. And I know in your initial brief you talked about that in a few spots, saying, well, that case was not directly on point because there were some different issues, but it stayed in the—and then there's some appellate court cases. But if they have the right, one option is move to dismiss it. That's not intervening. That's changing their mind about not intervening. Once, you know, again, this clicked into action after you made this motion for discovery. I mean, you made the motion to find some information out from them. I never made a motion for discovery. Well, I don't want to quibble about that. But if I could address the Saatchi case, if I may, Your Honor. It's like our case because the Attorney General in that case initially declined intervention in the circuit court. On appeal, the Attorney General was granted leave to intervene in the Illinois Supreme Court under Section 2-408 to discuss the unconstitutionality of the statute. That case favors our position because that case held that private persons such as myself do have standing to sue, and the Whistleblower and Reward Protection Act, which is the predecessor to the statute as it currently exists, was constitutional. That case was dismissed on motion of the main defendants for a lack of standing. It was reversed in part and remanded. However, I think that it's pretty fundamental, and it goes without saying, that only a party to the litigation can bring a motion to dismiss. And the statutory scheme wants the state makes an initial election not to intervene in Section 175-4C-3. If the state elects not to proceed with the action, and then they later change their mind, the statute says that the court may nevertheless permit the state to intervene at a later time upon a showing of good cause. They never brought a motion for leave to intervene at a later time for a showing of good cause. Once they intervene... Isn't there a third option? No. That's what it seems to me the shocking... The way I read it, and I don't mean to interrupt the court, I think that it's pretty fundamental that the only party entitled to dismiss the action is the plaintiff. And when they elect not to intervene... Isn't the state... It's a two. The dent or any recovery goes to what groups? It depends. I mean, in... To the benefit of... We had to see... The benefit is the attorney gets a cut of what... Well, I will say that... So the benefit goes to both counsel... I will say that one of the cases cited was Union County v. Merriscorp, which was a Seventh Circuit case that was written by Judge Posner. And in that case, they discussed the St. Clair v. Merriscorp case, which was pending in the Circuit Court of St. Clair County. And Posner basically said, if that works its way up to the Illinois Supreme Court, it may trump our opinion here. To answer your question, it was reported in December of 2015 that that case settled for $800,000. So it was also reported that the county clerk, I think, received $36,000 of that. It was brought by the state attorney. The attorney got in excess of a quarter million dollars. So if you had been the attorney representing the state in that case, what would you have done? I don't know. What's the motivation here? That's a... Isn't that the motivation? The motivation is to recover money for the state. Our FOIA request... So you didn't take any percentage that you could be... No, under the statute, it provides for what the attorney can recover. And certainly, there's a financial incentive for the attorney to prosecute these actions. If the state takes over the action, the court will determine the initial whistleblower's fee between 10% and 20%. If the state declines in the private attorney prosecution action, it goes up to between 20% and 30% by statute. If the assistant attorney general takes the podium and asks for leave to intervene from this court, much like occurred in Chiachi, wouldn't that move the whole issue? I would ask that any such motion be put in writing, and I'd be given leave to respond in writing. They have to show good cause. I don't think they could show good cause. The only reason they moved to dismiss this case is because they were under order of the circuit court to turn over their investigative file for in-camera inspection under seal. Maybe some of the work that you would be required to do as an attorney representing the court. Have you done a lot of work? I'm sorry? Have you done a lot of investigative work on this case? We did quite a bit of investigative work before we filed the lawsuit. Like I said, I think that this implicates a separation of powers. From the appendix, page 89, is the transcript of proceedings from March 27, 2015. Ms. Kerr, on behalf of the attorney general, discussing the Judge Healy case, says even when she declines, meaning the attorney general, she controls the litigation at all times. Judge Anderson said that's interesting because I think I control the litigation. I think that the attorney general was very heavy-handed in this case, having declined intervention, having admitted in pleadings they filed on July 15, 2014, that the states are non-party, to come in on a motion to dismiss the case. I'm not saying they don't have the right to move to dismiss the case, but they have to. The statute gives them the right. But they have to be in the case to begin with. You have to read... They are in the case through you. No, they're not. You're representative of the state. I am. Yes, so they're in the case. They're not. They declined intervention, and they admitted the states are non-party to the case. All right. Let me follow up a little bit on intervention. I know that intervention is typically a term of art where somebody is asking to be let in as a party. When you read the statute, it sounds as though intervention in this case is the attorney general stepping in and saying, I want to take over this litigation, and I want to be the one who's running it from now on. It's not saying I'm not a party. It's saying I just don't want to have an active role in this. But the state... I mean, you're an ex-rep. You're representing the state. It seems like the state is always a party. Right. So is that wrong? No, to the extent that they're the appellant, that's correct. The state can certainly argue on behalf of its own office here, because it never sought leave of court to intervene on behalf of the state. See, that's the difficulty I have with that. Right. The concept is, it seems to me under the statute, and that's the follow-up on Justice McDade's questions, there are three options. The state that's already a party to this once this action is filed, because the recovery is on behalf of the state. The attorney general, who's the attorney for the state in most actions, in almost every action, can decide to, once this kind of action is filed, to officially intervene and take over the action. In other words, intervention is not to be a party. It's to take over the litigation. They can decide they don't want to take over the litigation and just let it go on. Or there's a third possibility under the statute, is they just come in and move to dismiss the action. They're not trying to take it over. They're moving to dismiss it. And that's one of the options they have. They don't have to say, I want to be a party now. I want to dismiss it like some other intervener. They just say, look, we're the attorney general. We don't want this action to proceed. We don't want to do it, and we don't want you to do it. We want it dismissed. And that's what they did the third option. I understand the court's reading of the statute. This is the third option after they first said, well, we're not going to get involved. And then they decided they want to dismiss it. There's no prohibition to that. There's no prohibition to it as long as they follow the statutory mandate in 175-4C-3. I think that if the court reads the statute as three options, it really renders 4C-3 meaningless, because it says it may nevertheless permit the state to intervene at a later time upon a showing of good cause. And what I'm saying is they never showed good cause to intervene and to dismiss the action. See, the reason I'm wondering about that section is that's when the state decides, you know what, I think now we want to take over the action. That's not the decision they made. That's when you do the 740-C-3. Okay, they decide they're not going to take over the action. They just want to dismiss it. You see, I don't see a distinction between the two. If they're going to dismiss the case, they have to take it over. They have to be a party. They have to go before the court. The attorney general cannot dismiss a case. The circuit court judge may dismiss the case on motion. And that's what I'm saying. It's a two-step process. So 4C-3 doesn't say that they may intervene at a later time in order to prosecute the action upon a showing of good cause. I think that the court is reading that into the statute. It's not there. The attorney general, and that's why I say it's a conflict between the executive and judiciary, the attorney general cannot dismiss a case. They don't have that power. The circuit court has that power. I'm not appealing a decision of the attorney general. I'm appealing a decision of the circuit court. The executive, they have to bring a motion to intervene on a showing of good cause because they elected not to intervene at the beginning. That's the only time they can take over the prosecution of the case, and then should they deem it necessary to take a voluntary dismissal. Where's the time bar to this? Time bar to what? To filing the motion by the attorney general to dismiss the action. I don't see a time bar in there at all. What I'm saying is I would argue that the statute needs to be read in its entirety. So when they make an initial decision to decline intervention, if they then want to come in and prosecute the action or dismiss the action, they have to show good cause for giving leave to intervene. The court gives them leave to intervene. They're not an entity unto themselves. Under your interpretation of the statute, hypothetically, if the first action taken by the attorney general after you file the action, okay, the first thing they file is a motion to dismiss the action. They have to declare that they're intervening at that point. They never did that. Where's that in the statute? That's under 4B4B. It says that the state shall, before the expiration of 60 days, either proceed with the action or notify the court that it declines to take over the action. Okay. And then in C2A? Right. Okay. It says the state may dismiss the action. It says if the state proceeds with the action in C1, and then in 2A the state may dismiss the action. If the state proceeds with the action, it shall have the primary responsibility of prosecuting the action. It shall not be bound by an act of the person bringing the action. Such a person shall have a right to continue as a party to the action. And then subject to the limitations set forth in paragraph 2. Right. Paragraph 2A, the state may dismiss the action. Right. And they can do that. The problem is they declined to intervene. Counselor, your time is up. Okay. Thank you. You have five minutes. All right. Thank you. Ms. Botianza? Good morning. Good morning, Your Honors. Counselor? Did the Attorney General enter an appearance? The Attorney General did not enter an appearance. In the trial court? In the trial court. Just filed a motion? Yes. You know, as Your Honors have recognized, you know, the State of Illinois is the real party in interest in actions brought under the False Claims Act. And so any interest that a relative, such as Mr. Soporta, would have is necessarily subordinate to the state's interest. For example, in this case, Mr. Soporta alleged that MERS and these other defendants made fraudulent filings in the county recorder of deeds offices. And he alleges that they did so to defraud the state of money. So that makes clear, is clear from those statements, that Soporta himself suffered no injury. Any harm that was suffered was suffered by the state. And so that's what illustrates the logic behind giving the state ultimate control over these actions. In its January 2014 order, the circuit court that permitted Mr. Soporta to prosecute the action on the circuit court made clear that the State of Illinois could later either intervene in the action or could dismiss the action. As Your Honor noted, Section 175-4C2A authorizes the state to dismiss the action, even if the relative objects. So long as the state provides the relative with notice of its motion, and so long as the relative gets a hearing before the circuit court on that motion. So even if the Attorney General initially declines to intervene in the case, which is what she did here, the Illinois Supreme Court in Shoshetty, as Your Honor recognized, says that the General is authorized to dismiss these actions at any time over the relative's objection. And in particular, directing Your Honor to 215 Illinois 2nd at 512, which is the Shoshetty decision, it does set forth three different options. It says the Attorney General may, one, intervene and assume primary responsibility. Two, decline to intervene and permit the key time plaintiff to conduct the litigation. Or three, simply dismiss the action. So, you know, Mr. Soporta's arguments that he raises today and those that he made in his reply brief that the Illinois Attorney General has to affirmatively intervene is just not supported by the statute or by the case law. Well, when you look at 740 ILCS 175 backslash 4C2A subparagraph C, which is on page four of Appelmont's brief, the title, the subtitle of subsection C, is Rights of the Parties Defeated on Actions. And so I do understand counsel's argument that the state can only become a and not by designation in the caption of the case. Why doesn't the Attorney General just file a motion to intervene and obliterate the argument? Because the Attorney General is not required to specifically intervene, the Shoshetty decision and various other decisions make clear that, again, this action is on behalf of the state. The state has ultimate authority over the action and, you know, has broad prosecutorial discretion in how the action moves forward or doesn't move forward, as the case may be. On July 15, 2014, the state sent Mr. Soporta its motion to dismiss the complaint, pursuant to Section 175-4C2A, and it provided him with the required notice that it planned to present the motion to dismiss. The state explained in its motion for protective order, which was also filed that day, among other things, that the state thought the lawsuit lacked merit. The case law in this area provides that the state's decision to dismiss an action under the False Claims Act will be upheld by the court unless the relator presents glaring evidence of fraud or bad faith on the state's part. And in this case, Mr. Soporta presented no such evidence. He insists that the lawsuit's meritorious, but that's not the relevant question. Once the state has moved to dismiss, the only relevant question is whether he has and can produce glaring evidence of fraud or bad faith. And because that evidence just doesn't exist, the circuit court correctly granted the state's motion to dismiss. Regarding the motions for reconsideration and for protective order, as an initial matter, these were the attorney general's motions. So the attorney general filed these motions and not Mr. Soporta. So it's hard to see how he could claim that there's reversible error in the court's decision that these motions were moot. Plus, the court acted well within its discretion in concluding that these motions were moot. And issues moot, as this court well knows, when the rights of the parties are no longer in controversy. And in this case, the circuit court had already granted the state's motion to dismiss, so there was no need to assess whether or not to grant a protective order because the case was closed. The circuit court also did not abuse its discretion when it denied Mr. Soporta's motion to disqualify the attorney general because it was both frivolous and untimely. The attorney general will only be considered to have a conflict of interest when she's either an actual party to the action or if she has interest as a private citizen. So in this case, the allegedly disqualifying event was a dinner that the attorney general attended in 2011. This dinner was public knowledge. Mr. Soporta, I believe, attached a press clipping of this dinner to one of his filings, so there was no secret. It was public knowledge. And the attorney general was being honored because she had drafted legislation to prevent mortgage fraud and predatory lending. Soporta tried to disqualify the attorney general on the ground that the potential defendants, in his view, had hosted that dinner. But, you know, the case law says she has to either be an actual party to the litigation or interested in her private capacity for there to be a conflict, and that was not the case here. Plus, Mr. Soporta knew about this alleged conflict in 2011, and he didn't raise his motion until March 2015. The courts require parties to raise disqualification motions with reasonable promptness, and plainly he failed to do so, meaning he waived any right to challenge the attorney general's continued representation of the state. Unless this court has any additional questions. I guess I have a question that is a follow-up to the question that I asked at Chamath, and that is how can an attorney represent the county recorders and the county clerks without first being contacted by them and requesting representation by counsel? Because if there is a need to blow a whistle here, it seems as though it should be initiated by one county recorder or one county clerk. And based on this record, I don't think there's anything supporting that. So my understanding of the False Claims Act and how it works is that a private party, what's supposed to happen is that a private party, for example, Mr. Soporta, would see and identify an issue that maybe the county recorder of deeds offices was not aware of. And so he would bring an action on their behalf. At that point, you know, and that's where the attorney general's involvement comes in, because the attorney general is the chief legal officer for the state, and so to the extent that there is an issue involving the state, the attorney general has to or has the first right to step in. So he brought his lawsuit, and if we agreed with him that it had merit, then he could move forward with it. Or you could take over. Or we could take over, right, and the county recorder of deeds offices would be considered, you know, a product of the situation through the attorney general. If you took it over. If we took it over or if we agreed to allow him to prosecute on the state's behalf. So did you do that this time? Were the county recorders notified? We just dismissed the action. I don't believe that they were separately notified. We concluded that the action among other things. Initially you didn't dismiss the action. Right. Initially we declined to intervene. You declined to intervene. So what was the import of that? Your opponent suggests that that means that that had an impact, that act of not acting. It had an impact that once you didn't initially decide to do a motion to dismiss, once you said the state's not going to intervene, which is one of your options, under the three options, your opponent is suggesting, I think, that that required you, if you were going to later on do a motion to dismiss, which is the third option under the case, you would have had to come in and say now we want to intervene and dismiss the case. What's your argument to that? Our argument is that, well, we disagree. There is no necessary import from a decision not to prosecute the case. That's not the same as saying we think the case has merit and that it should move forward. It's just that we have chosen not to take any action at this time. So there's no import from that. So is there any timeline? In other words, can you, if you decide not to intervene and you decide not to take any action, okay, is there any time period where you would have had to file the motion to dismiss or can you file that at any time? The Supreme Court in Shosheti says that we can file a motion to dismiss at any time. What does it mean when you intervene? I think that Your Honor sort of got, I think Your Honor's interpretation of that was correct, which is that if we decide that the case should move forward and we decide that we would like to prosecute the case, then we would intervene and essentially have Mr. Soporta or another relative step back. Is intervening making you a party? We are always, no, Your Honor, I think we are always a party and we don't, there's no additional steps that need to be taken in a case under the False Claims Act because it's brought on behalf of the State of Illinois. Is an intervention, really, what attorney controls the litigation? Is that what that is? The intervention is? Assuming that the case moves forward. Who, what attorney is the one who takes over? Yes. Whether it's the realtor or it's the... I think that's right, Your Honor. So it's counsel in control. Yes. If the state intervenes or had intervened in this case, does counsel still get cut if the lawsuit is successful or if it were to settle for $800,000? I actually don't know the answer to that, Your Honor. I'm not sure. He remains a party. If the state intervenes, Mr. Supporter remains a party. I don't believe so. I go again with my interesting questions. They are very interesting. Because in my brain, it seems to me that the state has the right to elect who is going to be their attorney. And in essence, by filing the motion to dismiss, the Attorney General is saying, we don't want him blowing the whistle. We don't want him. Yes, I think that's right. Just one more factual question. The way that I was reading the briefs,  Yes. Mr. Supporter filed a motion to get those documents from the state. And that was followed immediately by the motion to dismiss, which sort of suggested that the state thought that his getting that information from them would be damaging to the ongoing investigation. I'm not sure. That's what I was reading into it. That is correct as a factual matter, that the state had an investigation that included some of the allegations that Mr. Supporter raised. The state's investigation predated his filing of a complaint. And the state did object to his. He made an oral request, I think, to discover the state's investigative file. Some of those documents were protected by attorney-client privilege. Some of them were protected by a confidentiality agreement that the state had entered into with various other state and federal officials who were looking into these issues. So, yes, I think Your Honor has set the factual record forth correctly. Was there another question? So you just, rather than give that up, you filed a motion to dismiss his actions? I don't know. I'm sorry. Is that the sequence? I don't know that it's that simple. Certainly his request for our investigative file, that definitely, you know, was a part of it. But I think the state also concluded that the factual allegations really were without merit and that it didn't want the case to move forward. And my understanding is that the state is not, is no longer investigating the specific allegations with respect to MERS because they don't think it has merit. The case law suggests that it's improper to have an inquiry on the motivations of the state. Yes. Is that right? That's correct. Why the state's dismissing the action? Yeah, the courts have said that, you know, they will not second-guess the state's decision. Essentially the burden is on the relator to produce some evidence of fraud or glaring evidence, rather, of fraud or bad faith. And so long as he hasn't done that, then the court will grant the motion to dismiss. Any other questions? If there's nothing else, we would ask that you affirm the circuit court's rulings. Thank you. Thank you. Mr. Sepulveda? Thank you. Again, this is a key time action. It's brought on behalf of the person and the state. I believe that the Attorney General did file an appearance initially. I think the councilman spoke. I don't want to make a misrepresentation. I don't know if that appearance was on behalf of their office solely or on behalf of the state. The point is they declined intervention. I brought this case as a domiciliary of the state of Illinois and also as a taxpayer. I don't believe I have an attorney-client relationship with the county clerks and recorders of deeds. The court may disagree with that. I don't think that that's my place here. My place here is as a whistleblower. If I was a non-attorney, I could have filed this key time action on behalf of myself and on behalf of the state. The Attorney General cannot simply dismiss the action. They're not a court. They're part of the executive branch. In Ciacchetti, the Attorney General moved to intervene in the Supreme Court. Any other language in that case to the contrary is obiter dictum. They say that the Attorney General declined to intervene in the circuit court, but the Supreme Court granted them leave to intervene in the appeal pursuant to Section 2408 of the Code of Civil Procedure and to file a brief addressing the constitutionality of the act. In our case, the Attorney General never sought leave to intervene either in the circuit court or before this tribunal. They've got no standing to argue. As far as fraud and bad faith goes concerning the motion to dismiss, and I'm not waiving my prior arguments, but if the court believes that a non-party to the action in this instance can file a motion to dismiss, I'd like to make three points. Number one, they exercise bad faith in not following the statutory scheme by refusing to petition the court for leave to intervene upon a showing of good cause after they initially decided not to intervene. That's under 4C3, and we've discussed that. Two, there was bad faith in not obeying Judge Anderson's order that it turn over its investigative files to the court under seal. This was an order June 25, 2014. It's at page 46 of the common law record. This is not discovery. The court asked about is there a time limit. 4B4b says that before the aspiration of a 60-day period or any extensions of time obtained under paragraph 3, the state's jail. And then in sub B, notify the court that it declines to take over the action. The Attorney General kept this case under seal as was its right for two years. When we got to about a year and a half, and they came in repeatedly on motions to extend keeping the case under seal, they said, Judge, our investigation continues. We have to keep this under seal. This is when it was before Judge Petrungaro. I said to Judge Petrungaro, I can't argue because I don't know what the investigative file is. How can I possibly say that they don't have a right to keep it under seal? At that time, Judge Petrungaro ordered the Attorney General to turn over, for in-camera inspection, information regarding their investigation. It wasn't a discovery request by me to the Attorney General. It wasn't a motion for discovery. This was an order to the circuit court. They turned over information regarding the investigative file. Judge Petrungaro reviewed it. She issued a ruling thereafter and said, we'll give you 90 days. We'll keep it under seal, but you have to make a decision whether you're going to intervene or not in 90 days. On January 15, 2014, they elected not to intervene. The case was then transferred to Judge Anderson, who reviewed this. We got into a dispute over what was exactly turned over to Petrungaro. When they elected not to intervene, they said, unseal it. I said, great. I get to see what was submitted to the court under seal. They said, no, you don't. We litigated the issue. The case was transferred. Anderson said, I don't care what Petrungaro said. I'm ordering you. Judge Anderson? Judge Anderson, I'm sorry. No disrespect. Judge Anderson ordered the Attorney General to turn over its investigative file to the court under seal. That was on June 25, 2014. It's page 46 of the common law record. It's in our appendix at page 71. The Attorney General disregarded the court's order and moved for dismissal. They filed a motion for dismissal on July 15, 2014. It's at page 47 to 50 of the common law record. They didn't have a right to do it. They needed to move the court on a showing of good cause why they should be allowed to intervene in the action. And I should have had a right to respond to such a motion. There was no good cause here. They moved to dismiss because they didn't want to turn over their file to the court under court order. I didn't order them to do it. I didn't request it. It wasn't a motion to compel discovery. The court ordered it because they had kept this case under seal for two years. How did it first happen that it was kept under seal? Was that on motion? Of the Attorney General. As a whistleblower, I am obligated to give them, to serve them with the lawsuit at the beginning. You have to file it under seal. They come in and they extended the seal. They don't want it released. Did you object? No. To allowing them to extend the seal? They wanted to investigate it. That's fine. But after a year and a half, yeah. Did they waive their lack of standing by not objecting? Their lack of standing, no. They had standing to come in under the statute. They have a right to come in and move to extend. That's before they decide whether or not they're going to intervene in the case. That's a power they do have. And they moved to extend it and it was granted. But when we were coming up on two years, the court wanted to... I'm not saying it did last. I don't recall exactly in the court record when they filed to put it under seal and to extend it. But I do recall that they filed an appearance. They brought a motion to keep it under seal, and that's what it was. It was kept under seal for months at a time, 90 days, six months, whatever it was. By the time we got to two years and they kept saying, well, it's our investigation, I said, I can't argue with that. I don't know what their investigation says. And the court said, let me see it. The self-executing language of assignment is at page six of our brief. We're alleging that lost fees are for recorded mortgages. It distinguishes it from the other cases. We're asking that the court reverse the order of dismissal. There's a least drastic means to deal with this dispute over the attorney general's investigative file. The court very easily could have entered a protective order if the attorney general was moving on its own behalf for that relief, and it did. But to dismiss it on behalf of the state when they've admitted today that they never even consulted with the county clerks or recorders of deeds is beyond the paper. But you haven't either. I'm sorry? You haven't either consulted with the county clerks or recorders of deeds. And the problem I have is I don't see them as my client. I see that I'm representing them, I'm standing in their place. As a whistleblower, I know they're represented by the attorney general, and I think I have an ethical obligation not to contact them because they're represented by counsel. And that's what I've been struggling with. I'd be more than happy to let them know what the attorney general's done here. But I feel my hands are tied to that extent. Without the permission of their attorney, I think I may have an ethical problem if I contact them. Okay. Thank you. And that's my position. I appreciate it. If it's wrong, that's well, that's what I've been struggling with. Okay. Thank you. Thank you. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in recess for a comment. Thank you. Please rise. This court stands in recess.